```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANGEL MEDINA,

                        Petitioner,                              ORDER
    - against -
                                                                 03 CV 5728 (NG)
JOSEPH T. SMITH, *Superintendent*,

                        Respondent.
-----------------------------------------------------------x
```

**GERSHON, United States District Judge:**

Petitioner, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted on December 23, 1997, after a jury trial, of murder in the second degree, in violation of N.Y. Penal Law § 125.25(3), and robbery in the first degree, in violation of N.Y. Penal Law § 160.15(2). He was sentenced to an indeterminate term of twenty-five years to life and a concurrent determinate term of twenty-five years.

Petitioner appealed the judgment of conviction to the Appellate Division, Second Department, claiming, through counsel, (1) that the hearing court improperly denied his motion to suppress; (2) that the court violated his due process and equal protection rights by denying counsel's request for daily copy of the trial transcript; and (3) that his sentence was excessive. Petitioner also submitted a supplemental *pro se* brief on appeal, in which he claimed (4) that the trial court erred in denying his request to remove counsel; (5) that he received ineffective assistance of counsel; and (6) that he was deprived of a fair trial when the court excused an alternate juror without an inquiry as to why the juror was absent. On April 8, 2002, the Appellate Division unanimously affirmed petitioner's conviction, holding that the evidence adduced at petitioner's suppression hearing established that the police had probable cause to arrest; that the trial court "providently exercised its discretion in refusing to grant the defendant's request for daily trial transcript minutes at public expense;" and that the

sentence was not excessive. Petitioner's remaining claims on appeal were held to be "either unpreserved for appellate review or without merit." *People v. Medina*, 742 N.Y.S.2d 64 (2d Dep't 2002). Leave to appeal to the Court of Appeals was denied on April 8, 2002. *People v. Medina*, 98 N.Y.2d 699 (2002).

On March 13, 2001, petitioner moved to vacate the judgment against him pursuant to N.Y. Crim. Proc. Law § 440.10, claiming ineffective assistance of trial counsel, in that the attorney who represented him at trial was not the same as the attorney he retained, which he claimed caused a conflict of interest, and that counsel pressured him to take a plea and failed to call his co-defendant as a witness on the issue of intent. The court denied this motion on August 8, 2001, holding that petitioner had "not met his burden to establish ineffective assistance of counsel. There is no showing that counsel's trial tactics were influenced by a conflict." Leave to appeal was denied on November 14, 2001.

On February 23, 2003, petitioner moved for a writ of error coram nobis, claiming ineffective assistance of appellate counsel in that counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's request for daily copies of trial transcripts, which was not warranted because petitioner was not indigent. Thus, petitioner argued, appellate counsel hindered his ability to bring all of his claims together on appeal. Petitioner also argued that the subsequent acquittal of his co-defendant rendered his own conviction invalid. The Appellate Division unanimously denied this application on April 14, 2003. *People v. Medina*, 757 N.Y.S.2d 754 (2d Dep't 2003).

Petitioner now seeks a writ of habeas corpus. In his petition, petitioner raises the same claims that he raised on direct appeal before the Appellate Division, with the exception that he does not raise a claim of excessive sentence in this petition. For the reasons that follow, the petition is denied.

# BACKGROUND

The evidence at trial established that, on the morning of April 9, 1996, two men, later identified as petitioner and his co-defendant, Cristino Ramirez, along with a third man, Eugenie "Anubi" Brito, arrived at the apartment of Jose Diaz on Albee Square in Brooklyn to purchase heroin. Several other people were in the apartment as well, including Domingo Rodriguez, who helped obtain the drugs, and his friend Chino. Brito, who introduced petitioner to Diaz, had met petitioner approximately two weeks earlier at a car wash in the Bronx. When the three men arrived at Diaz's apartment, petitioner said they had brought the wrong bag up to the apartment and indicated they had to go down to their car to retrieve the bag with the money. Brito, Ramirez and petitioner left the apartment and went to the car. Brito then waited outside while petitioner and Ramirez returned to the apartment.

Once they were back inside the apartment, petitioner and Ramirez each drew a gun. They told everyone to get down on the floor and asked where the drugs were. Chino ran toward the bedroom in the apartment. Diaz testified that he saw petitioner fire one shot toward Chino as he ran, after which Chino continued running to the bedroom. Rodriguez, who was on the floor with his eyes closed, testified that he heard one shot, but he did not see who fired. After petitioner and Ramirez left the apartment, the remaining men discovered that Chino had been shot and called the police, then left before the police arrived. Chino was later pronounced dead at the hospital. Lucy Roque, petitioner's ex-girlfriend, testified that, following the incident, petitioner told her that a drug deal had gone bad and that his friend had shot a man.

After his arrest, petitioner was interviewed by Detectives Alex Lloyd and Victor Howell. Detective Howell served as a Spanish interpreter during the interview and conducted the questioning

3

after being briefed by Detective Lloyd. Petitioner acknowledged and waived his Miranda rights and made a statement in which he admitted going to the Albee Square apartment for a drug deal and stated that his co-defendant shot at the person who tried to run. Petitioner also told the police that he was at the drug deal to "rip those people off." Petitioner signed a statement, written in English, that admitted taking the drugs and splitting them among himself, Brito, and his co-defendant. Because petitioner cannot read or write in English, Detective Howell translated petitioner's Spanish into English as he was speaking. The defense moved to suppress the statement, and the court held a Dunaway/Huntley hearing to determine whether the police had probable cause to arrest petitioner. *See Dunaway v. New York*, 442 U.S. 200 (1979); *People v. Huntley*, 43 N.Y.2d 175 (1977).

At the hearing, Detective Lloyd testified that he received a tip from a man named Victor naming petitioner as the suspect and providing his address. Detective Lloyd retrieved an arrest photo of petitioner and created a photo array in which petitioner was pictured in the number four photograph. On May 31, 1996, Rodriguez viewed the photo array and stated, "Here, here, it looks like Number Four. He has the same complexion, the face features. I would definitely recognize him in person." Detective Lloyd then prepared a wanted poster with petitioner's picture and information. Using the wanted poster, Police Officer Dennis Cullen located petitioner and arrested him on July 10, 1996. Petitioner then acknowledged and waived his *Miranda* rights and made the statement described above.

At trial, the defense acknowledged that petitioner was at the apartment for the purpose of participating in a drug deal, but argued that there was no evidence of a robbery of the drugs, and, as a result, no felony on which to predicate the felony murder charge. In support of this argument, counsel pointed to the lack of direct testimony as to what happened to the drugs and to Detective

4

Lloyd's investigation notes, which stated "possible drug robbery unsubstantiated." The defense also questioned the reliability of petitioner's signed statement, noting, among other things, that petitioner cannot read English.

## DISCUSSION

**Suppression Motion**

A Fourth Amendment claim arising from a state criminal conviction is barred from federal habeas corpus review so long as the State provided the petitioner a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465 (1976). A federal court is not permitted to judge the merits of the state court's decision. *See Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992). The court need find only that the State's procedure for resolving Fourth Amendment claims is "facially adequate" and that no "unconscionable breakdown" of the process occurred in the petitioner's case. *See id.*

The Second Circuit has approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.*, as being facially adequate. *See Capellan*, 975 F.2d at 70 n.1. Therefore, "federal scrutiny of [petitioner's] Fourth Amendment claim[] is not warranted unless he demonstrates that he was in fact precluded from utilizing [that procedure] by an unconscionable breakdown in the review process." *Shaw v. Scully*, 654 F.Supp. 859, 863-64 (S.D.N.Y. 1987).

Here, petitioner utilized New York's procedure at the trial court level and also had his claim reviewed on appeal. The Appellate Division upheld the trial court's ruling, finding that an eyewitness's "emphatic identification" of petitioner in a photo array "gave the police probable cause to arrest" petitioner. *People v. Medina*, 742 N.Y.S.2d at 65. Petitioner has not demonstrated that

5

there was any unconscionable breakdown in the review process.

Furthermore, the Appellate Division's decision, which held that the police had probable cause to arrest petitioner, was neither contrary to or an unreasonable application of clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence. Petitioner was arrested after an eyewitness picked his photograph out of a photo array. Therefore, this claim is denied.

**Remaining Claims**

1. Standard of Review

AEDPA created a new standard of review intended to "place [] a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399 (2000). A court reviewing a habeas petition under AEDPA may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d).

A state court need not set forth the legal basis for resolution of federal claims in order for the broadly deferential standard set out in AEDPA to apply. *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). Rather:

> The plain meaning of § 2254(d) (1) dictates [that for] the purposes of AEDPA deference, a state court adjudicate[s] 'a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the

6

> manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Sellan*, 261 F.3d at 312.

For purposes of AEDPA deference, the court must look to the state court record to determine whether a claim that falls within the catchall phrase "the defendant's remaining claims are either unpreserved for appellate review or are without merit" was disposed of on the merits by the state court. *See DeBarry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005).

> Where it is impossible to discern the Appellate Division's conclusion on the relevant issue, a federal court should not give AEDPA deference to the state appellate court's ruling. Generally, when the Appellate Division's opinion states that a group of contentions is either without merit "or" procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, a court will conclude that it fell into the "without merit" part of the disjunct even if it was not expressly discussed by the Appellate Division.

*Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (internal citations and quotation omitted).

2. Ineffective Assistance of Counsel

In order to succeed on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-99, 694 (1984). Under the first prong, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted). To establish the second, "prejudice" prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, petitioner claims that he received ineffective assistance of trial counsel because counsel attempted to coerce him into taking a plea, offered an "unelicited" defense to the jury, failed to object to the testimony of the deceased's sister as to his character, and generally gave "less than meaningful" representation. Petitioner raised these claims in his *pro se* brief before the Appellate Division on direct appeal. Because these claims would not be subject to a procedural bar in the state court, the court presumes that the Appellate Division disposed of them on the merits when it affirmed petitioner's conviction. That decision was neither contrary to or an unreasonable application of federal law, nor based on an unreasonable determination of the facts in light of the evidence.

A lawyer's communication of the government's plea offer does not constitute coercion. Moreover, petitioner proceeded to trial, so he can demonstrate no prejudice resulting from any alleged coercion. Regarding defense counsel's arguments to the jury, petitioner complains that counsel in essence argued the affirmative defense to felony murder contained in New York Penal Law § 125.25(3), even though he did not request a corresponding jury instruction on the defense and none was given. Section 125.25(3) provides, in relevant part:

> in any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:
>
> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
>
> (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
>
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

However, the record demonstrates that this is not the argument that defense counsel made in summation. Rather, he argued, based on the evidence presented at trial, that no robbery had occurred and that the government had therefore failed to prove a required element of the felony murder charge.

Next, petitioner claims that counsel's failure to object to the testimony of Consuelo Atehoa, the deceased's sister, was prejudicial because her testimony was irrelevant and was used to gain the sympathy of the jury. Contrary to petitioner's claims, the record demonstrates that counsel did object to a question about Ms. Atehoa's relationship with the deceased and to hearsay statements, and these objections were sustained. Therefore, as a result of counsel's objections, no unduly prejudicial testimony was presented.

Finally, petitioner claims that counsel's performance at trial, in which he made no opening statement, failed to cross-examine certain witnesses, and called no witnesses on behalf of the defense, constituted "less than meaningful" representation. A review of the record indicates that counsel made proper objections and cross-examined key witnesses. In a case with strong evidence against the petitioner, including petitioner's statement admitting to the robbery, there is no basis to conclude that petitioner received constitutionally ineffective assistance of counsel. In sum, petitioner has failed to

overcome the strong presumption afforded to counsel's conduct and has failed to show that his trial counsel's performance fell below objective standards of reasonableness.

3. Denial of Daily Copy

Petitioner's claim that he was denied equal protection of the law when the trial court denied his request for free daily copy of trial transcripts is rejected. The right of an indigent defendant to a daily transcript at trial is not guaranteed by the Constitution. The failure to provide it at government expense violates neither the Due Process nor the Equal Protection clause. *United States v. Sliker*, 751 F.2d 477, 491 (2d Cir. 1984). "Common experience informs us that it is entirely practicable to present an effective defense in a criminal case without daily copy, however convenient daily copy undoubtedly is." *Id.* The Appellate Division's conclusion that "[t]he trial court providently exercised its discretion in refusing to grant the defendant's request for daily trial transcript minutes at public expense, after it ascertained that the defendant was represented by retained counsel" was neither contrary to or an unreasonable application of federal law, nor based on an unreasonable determination of the facts in light of the evidence.

4. Denial of Substitute Counsel

Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction. If the defendant's reasons for dissatisfaction are made known to the court, the court may rule without more. *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001). In evaluating whether a trial court abused its discretion in denying a defendant's

motion for substitution of counsel, a court should consider the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense. *Id.*

In this case, petitioner retained David Goldstein, Esq., as his attorney. Mr. Goldstein sent Michael Nedick, Esq., to represent petitioner at trial, who appeared of counsel for Mr. Goldstein. Prior to jury selection and again after opening statements, petitioner complained that his lawyer was pressuring him to take a plea and requested that his original lawyer, the one he "paid for," be substituted. Mr. Nedick explained to the court that he was appearing of counsel for Mr. Goldstein, stating, "That is the firm hired. This defendant was aware of that a month ago. While he does not like my advice, I will try the case. I had discussions with him advising him about the case. I told him what I thought the outcome would be. He has the right to a proper defense." Mr. Nedick also informed the court that, based on a telephone conversation he had heard between petitioner and Mr. Goldstein a few days before trial, petitioner was aware that Mr. Nedick would be trying the case.

The court denied petitioner's request for substitute counsel, and noted that Mr. Nedick had appeared for petitioner on several occasions prior to the start of trial without complaint. The court also explained that Mr. Nedick was not pressuring petitioner to take a plea, but merely advising petitioner what he thought the outcome of the trial would be.

Since it appears from the record that this claim was preserved for appellate review, the court concludes that the Appellate Division disposed of it on the merits when it affirmed petitioner's conviction. That decision was neither contrary to or an unreasonable application of federal law, nor based on an unreasonable determination of the facts in light of the evidence. Petitioner's claim that the trial court erred when it denied his request for substitute counsel is denied.

5. Discharge of Alternate Juror

Finally, petitioner claims that he was deprived of a fair trial when the court excused alternate juror number two upon consent of both counsel during the trial when the alternate failed to appear after a recess. The State has made no effort to show, based on the record, that this claim was preserved and that the disposition was on the merits; rather, it appears to have been procedurally barred. In any event, this claim presents no basis for federal habeas corpus relief.

## CONCLUSION

The petition is denied in its entirety. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**

**/s/ Nina Gershon**
**NINA GERSHON**
**United States District Judge**

**Dated: June 24, 2005**
**Brooklyn, New York**